My name is Carl Verity, along with my co-counselor Susan Dorsey, who is also in attendance with me today on behalf of the Levin Education Access Project, who is a plaintiff. Appellants in this case, and for the Court's information, some of the parents are in attendance and observing our argument this morning. Facing a fiscal crisis that we do not dispute, but bereft of other ideas, the State of Hawaii has chosen unilaterally to shorten its instructional calendar for the school year, the 2009-2010 school year, by 17 days. What do you mean unilaterally? Can't they do that? They can do that, Your Honor, in a vacuum. However, with regard to this, my next point is that they did so without regard to the IEPs in place in this particular case. As the Court is aware, all of the children in this case have been deemed eligible for special education and related services under the IDEA statute. As such, they have, in effect, individualized educational programs for this school year, that is, the 2009-2010 school year. Those IEPs have the force of law and may not be unilaterally changed by the State or any other The first instance is in an instance where the parents and the Department of Education agree that the child's goals and objectives and needs justify a change in the program and services being provided to the child. The second instance is where a neutral hearing officer determines, after a full hearing and be met by a change in program and placement. Now, at the time these individualized educational programs were created, both parties, that is, the State of Hawaii and the parents, were under the mutual understanding that the school year would be three and a half weeks longer. And by the school year, I mean the instructional calendar would be three and a half weeks longer than currently exists. The goals and objectives identified for these children and the services identified as being necessary to meet those goals and objectives were created as a result of the mutual understanding that the school year would be 17 days longer than it now is. May I ask you a question at the beginning? Can you point to any case where a system-wide decision, a decision affecting all students, including disabled and non-disabled, has led to an automatic stay-put injunction? Is there any case out there? No, there is not, Your Honor. This is a case, I believe, of first impression in that regard. But I think that the real question or the real way to look at the case in terms of a fair response to your question would be this. If I were before you today arguing on behalf of a single student for whom an IEP had been created for a school year 17 days longer than the State had proposed to cut, that is, a 17-day longer school year, the State comes forward and says to that specific student, we need to save money. And for student A, we're going to do that by cutting your school year by 17 days. This Court would have, and for that reason alone, that is cost savings, not because of need, not because the parents or a neutral hearing officer had determined that that was an appropriate change in the child's program because of a change in need, but simply to save money. This Court would have absolutely no problem determining that that was improper and a unilateral change in program and placement. Well, I agree with you on that. Absolutely. My question deals with this is a system-wide affecting all students. And I could find no case, and I think you've agreed, it's a case of first impression. I agree with that, Your Honor. If I can continue with my hypothetical, however, assume that the State had a discriminatory system or a bilateral system in which all special education students were segregated and apart from the general population, contrary to the scheme envisioned under IDEA. And the State said, this is costing us millions of dollars a year. By cutting a month of instructional time from these, in Hawaii, approximately 19 to 20,000 students, we can save millions of dollars. We're going to do that. And the sole reason for doing that was cost savings, not based on need, not based on the parental agreement, and not based on a hearing officer's determination that the goals and objectives in the IEP either had changed. Don't you see a little difference in the hypothetical you continue to put and the situation here? I do not, Your Honor, because by integrating It wasn't to save money. It was because they didn't have the money. They weren't saving. They were making what they had stretch to cover as many of the needs that must be met as they could. Isn't that so? It isn't to save money. If they were just doing this because they thought it would save them some money, that would be one situation. They're doing this because we don't have the money. Well, that invites a plea of poverty that Congress doesn't Do you see any difference between those two things? Well, I think it's a distinction. I think it's a distinction without a difference around saving money and in a time of scarcity. It is no different than what the state is proposing here. They're saying we can't spend in deficit is what they're saying. What the district court said was they selected the best of a number of bad alternatives. Now if the court said that, they weren't saying we're doing a cost cutting trying to save money. We're saying we only have so many dollars. We can only do so many things. What must we give up? The district court said they gave up the least offensive of a number of things. Isn't that what the record shows? No, it doesn't. Tell us what it shows. Well, it shows that the state didn't consider any alternatives except cuts, such as raising Excuse me. I'm quoting the district court. The district court didn't say what I said the district court said? I thought you were asking me a question, Your Honor, about whether or not there's a difference. I'm saying the district court said they accepted the least of a number of bad alternatives. Now you're saying, no, they didn't. Is that what you're saying? I'm not saying the district court didn't say that. I misunderstood you. No, that's what the district court said. I'm saying it's a distinction without a difference. And that the state did not propose any alternatives to the district court. The only thing the state proposed was cutting. Now, it didn't propose raising revenues, which it could easily do tomorrow. The legislature is in session. It could be passed. The governor could sign it the next day. It could become effective on signature. They didn't propose that. You are firm, adherent to the idea that raising rates raises total taxes. Raising the tax rate raises revenues. Undoubtedly, right? You don't agree with Professor Laffer? I'm unaware of Professor Laffer's work, Judge Bea. I'm sorry to profess ignorance on that point. But I think as a general matter, it's accepted that one way of raising revenues is to raise, for example, in Hawaii, we have a general excess tax on goods and services. Suppose that in order to meet the deficit, the school board had said, well, we're going to make some changes. Instead of opening school at 8, we're going to open it at 9. And instead of closing it at 3.30, we're going to close it at 2.30. And that's going to save us two wages. Would that be a change in student placement or educational placement? That's the Van Scuy case that we cite in our reply brief, Judge Bea. In that case, the length of the school day changed. And the district court, I believe it's Northern District of California. It could be Central. I'm not sure of that. But it said that the school day, the services must change to correspond to the change in the school day. That was the opposite example where the school day was lengthened, and the court ordered that the services be lengthened to match the school day. I'd like to turn to what I think is the heart of the matter, and that is the appropriate standard. Following up on Judge Ferris' questions, I think that the real answer is getting to the weighing of equities that Judge Tashima engaged in below, even if he's completely right about everything he said, is improper in this case because Congress made an absolute choice in 20 U.S.C. 1415J. Your argument is that any change that is done in any of the time that is afforded to the district court, that would be a substantial change in program replacement. Is that correct? Any change that meets the standard that this court has announced in Van Dine, that would be a substantial change in program replacement. Now let me give you another example. In the past year or so, it was predicted that Hawaii was going to have gale force winds, and the word went out through the media that school should not be held the next day. Schools were closed that day. The winds never materialized. I don't think they made it past 10 miles an hour that day. That's another matter. However, no one is arguing that in a circumstance like that, that it would be considered a change in program replacement. We are talking about three and a half weeks. But it doesn't say change in program. It says change in educational placement. Change in educational placement and what the cases say, what this court's cases say, the Joshua A. case, the Johnson case, and what the regulations themselves say is that a program or placement is the last agreed upon IEP. Now the last agreed upon IEP for these children included 17 more instructional days than the state is proposing here. That must be considered a change in program replacement when you cut three and a half weeks of instructional time, especially given the fact that many of these students on the autism spectrum have an extended school year. May I ask you a question then about that? I always thought the purpose of stay put provision was to protect mainstreaming, and the purpose of FAPE, the appropriate publication provision, was to protect quality. If you're worried about quality here, shouldn't you bring a FAPE action and not a stay put action? I'm sorry if it's not clear from the record, Your Honor, but every one of these children has a due process request pending. We've sought stay put. So that's in process. That's all in process. We are not here to adjudicate the merits of whether or not there has been a change in program and placement. We're simply attempting to do what this court has repeatedly said stay put intends to do, and that is to preserve the status quo. The preservation of the status quo is necessary to preserve the integrity of the current program and to protect against harm that is inherent, the risk of harm, which is what Joshua A. said, the risk of harm that is inherent in changes in program or services without an assessment of whether or not those changes are appropriate for this particular student. Well, let me tell you the worry I have about this. I'm worried about the slippery slope situation. The IDEA is certainly designed to protect disabled students, but is it intended to give them veto power over every system wide policy change that affects them? Can you give me a limiting principle that allows you to win the case without sliding down that slope? Well, I think it's the state's slippery slope because in every instance, Your Honor, the Supreme Court, for example, in the recent cannabis buyers case has said to this court, when courts of equity cannot in their discretion reject the balance Congress has struck in the statute, citing the Tennessee Valley Authority case, once Congress exercising its delegated powers has decided the order of priorities in a given area, it is for the courts to enforce it, not to come in with some equities balancing, however compelling they may be, because what that invites in this particular case is pleas of poverty throughout the nation that states will now make to avoid their obligations under the IDEA statute. This state can find many ways of saving money through cutting various services as it's already doing. It can cut services to the regular education population. What it cannot do is come in and unilaterally change by three and a half weeks the instructional calendar for children who have IEPs in place that have the force of law. Your only remedy is to enjoin the striking of 17 days of furlough and force not only the disabled children to get the 17 days, but for mainstreaming purposes, have all the other kids go back there, too. Not all the other kids. There are some children who have mainstreaming who are in combined classes, that is, where the special education children and the regular education children attend those classes. In those instances, that would be the case until a hearing officer has an opportunity to make a determination that is not before this court, and that is whether or not the 17 days is a change in placement. And in answer to Judge Nelson's question, any change that is system-wide would be subject to, not the weight of equities, but to a state put order. A state put order in the case where it's apparent from the face of the matter that there is a change proposed. So let's say instead of an hour for lunch, you get half an hour for lunch. That's a change, and you can't put that in system-wide. If the student's IEP guarantees a level of services in order to meet the goals and objectives, the state must maintain those goals and objectives. Otherwise, this court is eviscerating state put and inviting every state in this circuit to come in, and we have a statewide system. Obviously, it's not going to apply. It would be every district in this circuit to come in at this moment, a time of financial hardship, and say, we can't do it. And then modifying IEPs on the basis of cost, not on the basis of need, that is directly contrary to what Congress intended, and gives the states and the school districts an opportunity to evade federal law that is contrary to our principles of federalism. It's not just the substantive nature of the IEPs in question. Federalism underlies these considerations. And again, I would just refer you back to the Oakland Cannabis Buyers case, in which the court said, where Congress has spoken, it's not for the courts to come in and say that there are equities that should override what Congress has defined. I'd like to, I see that I'm over my time. I'd like to ask- We'll still give you two minutes. Thank you very much, Your Honor. I appreciate it. May it please the Court, Mark Bennett and Deirdre Marie Eha for the State. There are at least four reasons why this Court should affirm Judge Tashima's decision, the primary one being that Judge Tashima did not abuse his discretion in finding that there was no change in the current educational placement of any of these plaintiffs. As Judge Tashima said, this was an overall administrative decision as to how to run the schools. There is no case that supports the position that plaintiffs are putting forward, and we respectfully submit that this is not a case of first impression, and that there are five and likely six circuits that have dealt with this issue and said the reach of the state put proceeding does not reach these kinds of budgetary decisions that are facially neutral and that affect all students. And we would refer the Court to the Second Circuit Concerned Parent case, the Third Circuit De Leon case, the Fifth Circuit Wild case, the Sixth Circuit Tilton case, the Seventh Circuit Hale case. In addition, the plaintiffs who are really arguing not a change in educational placement... Mr. Bennett, have you been able to see the affidavits of the parents of the children, specifically Mrs., I guess the mother of N.D., saying that in her opinion or her observation, the lack of Friday teaching so far has had a deleterious effect on her child and he has regressed to some behavior which he didn't have before that? We have, Your Honor, and if we had thought it was appropriate in this setting, we would have contrary affidavits that we would submit, but this isn't a trial court, and plaintiffs offered no justification for submitting that record here rather than in the district court. Even if this court denies the motion, plaintiffs are free to re-argue or re-file their case in the district court, but we would have affidavits that we would have submitted to a proper body. But what we would say with regard to the individual education plans is if the court looks at them and we describe them at note 18 of page 23 of our brief, not one of them has a description in them of the number of days in the school year. None of them say these IEPs have 180 days. Not one of them says the children have to come to school every Friday. In fact, every one of them specifically deals with circumstances in which there are breaks. For example, A.U., who's one of the plaintiffs, gets extended school year services every day. J.K. gets extended school year services when there's a calendar break of two or more days. M.D. What does extended school services mean? It means that they get services even when school isn't in session. The calendar, Your Honor, has a two-month break in the summer for ten-month schools, a two-week break over Christmas, a one-week spring break, and multiple days when children aren't in school because they're non-instructional days. And every single one of the IEPs which are before the court specifically discuss what happens to the children if there's a break of more than two days, three days, four days, or seven days. They get certain services under their IEPs whether school is in session or not. What services do they get on furlough Friday? It depends on the individual child, but they might get one-on-one service of an aide. They might get at-home service. They might get a service at a different location. They might get the same service that they would get if it's instead of being a furlough Friday, it would be a Saturday or a Sunday or the middle of spring break. But the IEPs don't get mainstreaming. They don't get mainstreaming just like they don't get mainstreaming on days when school isn't in session, Your Honor. But the budget crisis here has affected the state as a whole. Our judiciary is closed for furloughs two days a week. And there is simply nothing in the IEPs which says that kids get to come to school every Friday. But more importantly, every one of these IEPs deals specifically with the situation of what happens when you're not in school. And it describes the services that children get. And as the score of declarations we submitted in the district court illustrate, we're not denying the children the special education services to which they're entitled. We're rescheduling them. And there's absolutely nothing in the term current educational placement which means Friday. And there's no case that supports the view that current educational placement means Friday, February 12th. That the current educational placement means the overall educational setting. And the way the state put provision in the law grew up and is described by the Supreme Court in the Honig case in particular is it was intended to stop schools from under the guise of discipline kicking a disabled child out of school or excluding them from classes. There is nothing to suggest that it was intended to hamstring schools in deciding on what general policies for the school district as a whole would be. And the Ninth Circuit in fact in the Johnson case in 2002 specifically said that the purpose of statehood is to strip schools of the unilateral authority to exclude disabled students. The Hawaii School District has not done that with any of these students. Hasn't materially changed the type of services they get. But importantly, if the children are being denied a FAPE, if the children are not getting what they are promised, they have the ability to obtain that through an administrative hearing. Two of the students in the Companion case have in fact gone to a hearing officer and lost because the hearing officer with those two children said, you haven't proven your case. You haven't proven you've been denied anything. Your services are being rescheduled. The children here don't want those types of hearings. They want a court to order that the educational placement has been changed without any support. I don't typically like to quote lengthy paragraphs from cases, but I think that the paragraph in the Tilton case from the Sixth Circuit is particularly apt and I would ask the court to indulge me in this quotation. Congress did not compel as the price for federal participation in education for the handicapped, a wholesale transfer of authority over the allocation of educational resources from the duly elected or appointed state and local boards to the parents of individual handicapped children. And in Tilton, the court specifically said closing this particular facility for budget reasons does in that case, because a whole bunch of kids went to this one particular program, it does change their current educational placement, but the Congress did not intend the state put proceeding to govern that kind of a circumstance. Congress intended the state put proceeding to deal with schools making decisions directed at or that affect individual kids. Congress did not intend the state put proceeding to even govern a circumstance where the school district is making decisions about the system as a whole that affect regular education kids and special education kids that this provision, statutory interpretation, is not what this is intended to reach. And Judge Tashima in this case looking at the facts and the law specifically said, and we believe correctly in the transcript at 92, how long the school year is, is not a part of the educational placement and the changes made here are not changes in the educational placement of any plaintiff. We would also argue, Your Honor, in addition to the fact that it's clear as a matter of law and fact that there weren't changes in the educational placement of any student, that the plaintiffs have failed to exhaust their administrative remedies. What they are really arguing here is a failure to implement their IEPs. They're saying we're promised this, this, this and this and we're not getting it. And a failure to implement an IEP is not the same as a change in a current educational placement. We contest that there is a failure to implement the IEPs, but this Court has said, and we would quote to the Court from the Kutasi case in 2007, the Ninth Circuit decision, if the injury could be redressed to any degree by the IDEA's administrative procedures or if the IDEA's ability to remedy an injury is unclear, then exhaustion is required. The reason plaintiffs have not gone forward with their administrative hearings is they're not seeking to have the I think Mr. Verity told us that each one of these plaintiffs have requested a due process hearing. They've put them all on hold because their argument is not, or none of them I believe have gone forward of Mr. Verity's clients, but in any case, even Mr. Verity has conceded they haven't been concluded. So they haven't exhausted those hearing procedures, whatever reasoning. In the meantime, what he's saying is until those procedures have been exhausted, state court means you can't have Friday furloughs until the due process hearing has been held, right? That is certainly his argument without any case support at all, and it's totally contrary to the cases that have discussed, Your Honor, exactly what a current educational placement means. A current educational placement means Roosevelt High School. A current educational placement may mean special education and regular education at Roosevelt High School or Farrington High School or Moanalua High School. It doesn't mean Friday, February 12th, and there is no case that supports that position, and that's why what their claim really comes down to is they're not getting what they're promised in their IEP, and to get that as opposed to sending them off to another school or sending them off to a different school or expelling them for 20 days. And to get what they say they're promised in their IEP, which doesn't change the educational placement, what the state is doing, what they have to do is exhaust their administrative remedies and see if the hearing officer agrees with them. The third argument that we would make in a You're arguing on a parallel track from Mr. Verity. He's probably going to agree with you that he has to exhaust his administrative remedies, but he says in the meantime, the state put order is a, if you wish, a statutory TRO that says keep the kid in school going the same amount of days until we determine at the due process hearing whether this is indeed a change in his IEP. And what our response to that, Your Honor, is is twofold. First, as a matter of law, the state put proceeding doesn't reach the type of systemic determination we've made. But you can't very well say he's not exhausting his administrative remedies. With respect, Your Honor, what our argument there is, is that the courts have said you can't come to federal court unless you have exhausted. Now, you can come and say, give us the state put, but our argument here is that in reality, when you look at the facts, they're not really arguing based on any case law that we've changed the current educational placement. They've argued we're not being given what is in the IEPs. The third argument, Your Honor, is that the relief they're seeking is barred because of their failure to join an indispensable party of which they had notice. The specific relief they sought from the district court was to void the state's contract with the teachers union. There is, we have no ability to order teachers back to work with that contract in existence. The contract specifically says, there are these furlough days, you don't come to school on those days. Even if the judge said, open the schools, we have no ability to order the teachers back to work with the contract that says, you get to stay home. So in order to grant the relief that Mr. Verity has sought, cancel the furlough Fridays, the contract would have to be voided, and due process required them to join the teachers union as a party. We cited innumerable... Mr. Bennett, do you think there's any reasonable prospect that the teachers wouldn't look forward to going back to the 17 furlough Fridays if they were given the opportunity? If they were paid for it? Of course they would. But the contract, in order for them to be ordered back, would still need to be voided. And finally, Your Honor, our final argument, and the law is clear, that in order to void that contract, which is a sine qua non of the relief that plaintiffs seek, they have to be a party, and they have that due process right. What they would say when they got to court is up to them, but the contract can't be voided without them being present in court. And finally, Your Honor, Judge Tashima did not abuse his discretion in failing to grant the relief plaintiffs are seeking, which is canceling furloughs for all. No court has ever granted that relief, and while plaintiffs argue that in a statehood order, an ordinary statehood order, you don't balance the equities, you don't look at the public interest with the relief that they seek, there's no reason to believe that the traditional injunctive test isn't 100 percent applicable. And in this case, Judge Tashima specifically found that plaintiffs had not met their burden of showing that the balance of hardships favors them or that the public interest favors this injunction. Mr. Verity has gotten up here and basically said what he said to Judge Tashima. Cut services to others. Maybe you should cut them in the Department of Human Services. Maybe you should reduce the payments you make to the poor. Maybe you should reduce the amount of instructional time for regular education students. Maybe you should close the courts four days a week instead of two days a month because we want to have extra services for special education students when the money isn't there. But Judge Tashima certainly didn't abuse his discretion in finding that the public interest didn't favor Mr. Verity's position. If there are no further questions, that concludes my argument. Thank you. Two minutes, Mr. Verity. Thank you very much, Judge Beall, members of the panel. Judge Beall, you succinctly said exactly what we're arguing here, not that statehood applies forever or that we're seeking some sort of ongoing indefinite injunction. We're only asking for statehood during the proceedings that are at issue here. And as the Clovis case and other cases this Court has decided, Taylor v. Onig, for example, have held, that the statehood continues throughout the due process proceedings and any appeal. Let me ask you a question. How long would it take you to conclude your due process hearings? The majority of them are set for hearing next month, Your Honor. We have them calendared next month. But there has to be individual determinations in each case. That is correct, Your Honor. Second question. I saw a notation that you're in mediation before Judge Ezra. Ongoing? As far as I know, Your Honor, and I'm sorry to interrupt, as far as I know, those efforts have come to a dead end. And they've come to a dead end because of the fact that the Teachers Union and the State of Hawaii were not able to come to any kind of agreement. We — I would just reiterate for the Court what you've already said yourselves in the Statehood functions as an automatic preliminary injunction and that because of the heightened risk of irreparable harm, it's not for the courts in a circumstance like this to second guess the underlying process, but to preserve the status quo. That's all Statehood is intended to do for the plaintiffs that are now before this Court, and that is to preserve the status quo pending a decision by a hearings officer as to whether or not the changes imposed unilaterally by the State are in fact a violative of IDEA and deny the children a free and appropriate public education, or whether they're in fact tolerable or somehow justifiable. One other thing I'd like to point out is that contrary to what Mr. Bennett has argued, there is no other form for Statehood except for the federal courts. This Court has ruled several times that the hearings officers, that is, administrative hearings officers, do not have enforcement authority. I cannot go to an administrative hearing officer, plead my case, and have that hearing officer issue an enforceable order. I must come on behalf of these parents to the federal courts in order for a Statehood order to issue and for the injunctive powers of the Court as envisioned by Congress in 20 U.S.C. 1415J to be imposed on the State to preserve the status quo and avoid what Congress has already determined is the probability of irreparable harm if the services are changed without an independent determination that those changes are appropriate. That's what we're trying to stop in this case. If we agreed that this is a typical, this is a situation in which the Statehood is the appropriate remedy, would we be unique? Has there been any case similar to this? There have been. The case that I believe is most analogous, Your Honor, is the, well, there are several cases. Taylor v. Honig is a good example in which the District attempted to interrupt a placement in a private school pending, during a due process request, and this Court said, you cannot do that. Because that is the most recent agreed-upon placement, whether you preserve the status quo, because that's the best information we have about what's appropriate for this particular child. One child. That's correct, Your Honor. We're talking about, you're asking for a remedy that we reverse the denial of a preliminary injunction and remand the case to the District Court with instructions to enter a federal injunction telling the State of Hawaii that it must renegotiate the contract with the teachers, open the schools for 17 days, and take money from the general fund that is otherwise allocated and put it into the Department of Education for that purpose, true? Only as to the litigants before this Court. This is not a class action. We have not filed this case. How many schools are involved? If I can look at the caption, I think I can tell you that. I believe there are five schools because I believe that... What's to stop the rest of the schools in the State of Hawaii piggybacking on your case and citing our decision and then asking for all the schools to be open? A predicate to that, Your Honor, has to be, and I just want to reiterate this, every one of the parents asserting that must do what the parents in this case did, which they would have to make a formal request for due process, which the department would then have to oppose, not negotiate some sort of resolution. And at that point, State would apply. This is a two-step process. Once the parents request due process, the department is required to convene a resolution session within 15 days of that request, at which the parents and the department attempt to negotiate a resolution. I can represent to you that several parents who would otherwise fit the criteria of this case reach resolution based on their resolution sessions. In fact, two of the plaintiffs that were in the case below dropped out because in the resolution process they got substitute services that they agreed would provide and meet the needs of those children. This is not a systemic case. It's not a class-wide case. It's a case that involves children at five schools who've not reached that sort of resolution. I will also refer you to the record in which we cite the Felix case, which is a tortured 10-year history of litigation regarding special education in the state of Hawaii, in which our federal district court judge, Ezra, was the sitting judge in that case, ordered a statewide consent decree, and at various times faced arguments like those being made here based on cost. He had similar arguments made in the state hospital case, which preceded the Felix case. And in both instances cited in our briefs, he has said, cost does not meet the federal obligation, state of Hawaii. You'll have to find those savings, the savings that Judge Ferris was referring to, elsewhere, not taking away from the programs for these students and, in our case, these particular plaintiffs that are before the court. It's not fair to balance the budget, and it's not consistent with principles of federalism to balance the budget on the backs of the students and parents who are before you. I want to thank the court for its attention and its thoughtful questions. I'm happy to hear from you. And the court congratulates the attorneys for a very lucid presentation. And that will exhaust the calendar for today, and the court will stand adjourned until tomorrow. Well, tomorrow we're meeting at the University of Hawaii at 9.30. So the court is adjourned. Thank you.
judges: Farris, Nelson D. W., Bea